UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| MICHAEL MILLER and MAGDALENA MILLER, husband and wife,<br><br>　　　　　Plaintiffs,<br>　　vs.<br><br>TLC RESORTS VACATION CLUB, LLC.,<br>　　　　　Defendant. | Case No.: 4:18-cv-00070-JHM-HBB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION OR, IN THE ALTERNATIVE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, IN THE ALTERNATIVE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiffs Michael Miller and Magdalena Miller, husband and wife ("Plaintiffs"), hereby submit this Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Dismiss or, in the alternative, Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, filed by Defendant TLC Resorts Vacation Club, LLC., ("TLC"), and states the following:

**I. INTRODUCTION**

On or about August 2016, Defendant began calling Plaintiffs cell phones using an automated telephone dialing system. On two separate occasions, Plaintiffs made oral requests for call phone calls to cease. Both requests were ignored, and Plaintiffs were called at least seventy-

two (72) times on their cell phones. On May 31, 2017 counsel for Plaintiffs faxed a pre-litigation settlement letter to Defendant with a settlement proposal and request response date of June 16, 2017. Counsel for Defendant, David Waller Esq., responded via letter on June 14, 2017 and indicated all claims must be arbitrated pursuant to Defendant's contract which contained an arbitration clause. The parties through their counsel began substantive discussions in September 2017. Plaintiff requested a copy of the arbitration agreement on September 10, 2017, September 27, 2017, September 29, 2017, October 5, 2017, October 11, 2017, November 8, 2017, and January 18, 2018. No substantive response was made to any of the requests. Plaintiffs were not in possession of the original agreement and was unable to review the arbitration clause, therefore, they were forced to file this matter in Federal Court. Plaintiff alleges that Defendant violated the Telephone Consumer Protection ("TCPA"), 47 U.S.C. § 227, the Kentucky Consumer Protection Act ("KCPA"), KRS § 367.100, *et seq.*, and committed acts constituting an Invasion of Privacy – Intrusion Upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts.

  Defendant has brought this Motion to Compel Arbitration and Dismiss Action, OR in the alternative Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. The Defendant has argued that Plaintiffs are forced to arbitrate according to the arbitration provision entered by the parties and that it's pleadings failed to state a claim for which relief can be granted. Plaintiff asks this Court to dismiss Defendant's Motions because Defendant waived its right to arbitration, it's arbitration agreement is so unconscionable that it is unenforceable.

  Plaintiff is not disputing the authority of the Federal Arbitration Act, but instead argues, initially, that the motion seeking arbitration was not timely filed, and, secondarily, that even if it were timely filed, several unconscionable provisions within Defendant's arbitration

agreement, coupled with the lack of a severability clause, render it unenforceable as a whole or in part. The Federal Arbitration Act ("FAA") "'is a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Continental Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 730-31 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103, S. Ct. 927, 74 L.Ed.2d 765 (1983)). Under the FAA, "a written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 624 (6th Cir. 2003) (quoting *9 U.S.C. § 2*). To determine whether to revoke an arbitration agreement, "the Court must turn to state contract law." *Johnson v. Career Sys. Dev./DJI Joint Venture,* No. 4:09CV-76-M, 2010 U.S. Dist. LEXIS 4052, at *4 (W.D. Ky. Jan. 20, 2010) (citing *Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 451 (6th Cir. 2005)). Under Kentucky Law, an arbitration agreement is unenforceable if it is unconscionable. *Davis v. Glob. Client Sols., LLC,* 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011).

Additionally, Defendant's Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted should also be dismissed because Plaintiff has appropriately plead sufficient factual allegations that Defendant violated the TCPA, KCPA and invaded Plaintiff's privacy. Any further factual allegations would only be available to Plaintiff through discovery which is not available at these early stages of litigation.

## II. ARGUMENT

### A. DEFENDANT WAIVED ITS RIGHT TO ARBITRATE

As an initial matter and before turning to the substance of the arbitration agreement itself, Defendant has waived the right to seek arbitration in this matter.  Section 3 of the Federal

Arbitration Act ("FAA"), entitled "Stay of proceedings where issue therein referable to arbitration," provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration.*

9 U.S.C. § 3 (2008) (emphasis added). Based on the forgoing provision, where any arbitrable issue is pending in federal court, a court must stay the litigation upon the motion of one of the parties and refer the matter to arbitration **unless** the party seeking the stay is "in default in proceeding with such arbitration." A default under section 3 of the FAA includes waiver of the right to arbitration based on litigation conduct.[1] Here, Defendant waived their right to arbitration through their invocation of the judicial process which prejudiced Plaintiffs.

A pre-litigation demand letter was sent to Defendant on May 31, 2017. (See Ex. A – Demand Letter). Thereafter, Defendant's counsel sent a correspondence to Attorney Alla Gulchina on June 14, 2017. However, the email ended up in the junk box, until Attorney Gulchina came across it on September 1, 2017. At that time, she replied to Defendant's counsel and began discussion of the case. (Ex. B – Email Correspondence). Defendant's counsel indicated that there was an arbitration clause, so Attorney Gulchina requested a copy of the agreement with the

---

1 Although section 3 of the FAA uses the phrase "in default," the terms "waiver" and "forfeiture" arise more frequently in cases in which a court considers whether a party has waived its right to arbitrate through litigation conduct. *Planet Beach Franchising Corp, v. Richey*, 2008 US. Dist. LEXIS 48523, *10 (ED. La. 2008), citing, *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1365 n.16 (11th Cir. 1995), citing 3 Fed. Proc., L.Ed. Arbitration § 4:24 (1981)(noting that although the statue uses the term default and waiver have been construed as analogous in the context of 9 U.S.C. § 3); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995)(equating "a waiver of the right to arbitrate with a 'default in proceeding with such arbitration' under § 3")(additional citations omitted).

arbitration clause. (Ex. B). Attorney Alla Gulchina made the initial request for a copy of the arbitration agreement on September 27, 2017. (Ex. B). Defendant's counsel did not provide the copy of the agreement and Attorney Gulchina again requested a copy of the arbitration agreement on October 11, 2017. (Ex. B). At this point, Defendant's counsel stopped responding to Attorney Gulchina's emails. On November 8, 2017, Attorney Gulchina sent a follow-up email regarding the status of the original agreement including the arbitration clause. (Ex. B). Defendant's counsel again did not respond to Attorney Gulchina's request. In hopes that a settlement could be reached outside of court and without incurring any costs. Attorney Gulchina again reached out Defendant's counsel on January 18, 2018. (Ex. B). Attorney Gulchina indicated that it had been a few months since they last spoke, and she was still awaiting a copy of the arbitration agreement. (Ex. B). The Plaintiffs waited until May 9, 2018, before finally deciding to file a lawsuit and seek relief. In sum, Defendant waited over nine (9) months for the Defendant to provide a copy of the arbitration agreement. Meanwhile, Defendant ignored Attorney Gulchina's attempts to resolve this issue before filing a lawsuit, and Defendant only provided a copy of the arbitration agreement on June 28, 2018, four days prior (excluding weekend and July 4th) to filing a Motion to Compel Arbitration and two hundred seventy-four (274) days after the initial request to provide the Arbitration Agreement.

The history of talks between Plaintiffs and Defendant clearly show that Plaintiffs did all they could have to make "earliest feasible determination of whether to proceed judicially or by arbitration." *Kraftmaid Cabinetry, Inc.,* 50 F.3d at 391. Plaintiffs waited three hundred forty-three days (eleven months (11) and nine (9) days) from the day the Demand letter was sent out until they filed this lawsuit with the Court. To add insult to injury, Defendant has not even reached out to

Plaintiffs to explain what happened, or why Defendant completely ignored Plaintiffs and decided not to provide a copy of the arbitration agreement.

> The right to arbitration, like any contractual right, may be waived.[2] This is so because:
>
> When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, [the other] parties are prejudiced by being forced to bear the expenses of a trial (…) Arbitration is designed to avoid this very expense. Substantiality invoking the litigation machinery qualifies as the kind of prejudice (…) that is the essence of waiver.[3]

Furthermore, although the cases refer to the burden on the party seeking to prove a waiver of arbitration as a "heavy" one, this language does not heighten or otherwise alter the test for demonstrating waiver articulated above. Instead, to satisfy the "heavy burden" of demonstrating waiver of the right to arbitration, a party must show only that "the party seeking arbitration substantially invoke[d] the judicial process to the detriment or prejudice of the other party."[4]

To preserve the right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration."[5] It is necessary for a party desiring arbitration to invoke this right early in the case to avoid the unnecessary expenditure of resources by the Court and the parties.[6] As the Tenth Circuit has made abundantly clear:

> In general, we do not look kindly upon parties who use federal courts to advance their causes and then seek to finish their suits in the alternative fora that they could have proceeded to immediately. Such actions waste the time of both the courts and

---

2 *Price v. Drexel Bumham Lambert*, 791 F.2d 1156, 1158 (5th Cir. 1986).
3 *Id.*, quoting, *E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, 559 F.2d 268, 289 (5th Cir. 1977).
4 *Id.* see also, *Subway*, 169 F.3d at 326.
5 *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).
6 *In re Citigroup, Inc.*, 376 F.3d 23, 26 (1st Cir. 2004) ("if arbitration is invoked in response to a lawsuit, it must be done early on in the case so resources are not needlessly deployed.")(citation omitted).

>the opposing parties. The decision whether to arbitrate is one best made at the onset of the case, and not part way through . . . . The attempt of [a party's] attorneys to switch judicial horses in midstream either shows poor judgment, if planned, or poor foresight, if not.[7]

Plaintiff allowed Defendant ample time and opportunity to provide it with a copy of the arbitration agreement to comply with the agreement. Without a copy of the arbitration agreement, Defendant basically forced Plaintiff to file this matter in Federal Court. Defendant ignored the seven (7) requests by Plaintiff to provide the agreement and forced Plaintiff to bear the additional costs of filing in Federal Court, not to mention delayed the matter by several months.

Finally, where, as here, the party seeking arbitration fails to demand arbitration early in the proceedings, and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, "the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced."[8] This is so because, under such circumstances, the party claiming waiver "has already invested considerable time and expense in litigating the case in court, and would be required to duplicate its efforts, at least to some degree, if the case were now to proceed in the arbitrable forum."[9] Further, the prejudice resulting from a party's invocation of the judicial process and delay in seeking arbitration is not mitigated by the absence of substantive prejudice to the legal position of the party claiming waiver.[10] Consequently, because of the time, energy, and expense to the other parties as well as the court during the intervening litigation, there is an inverse correlation between the length of a party's delay in demanding the

---

7 *BOSCA, Inc. v. Bd. of Cty. Comm'rs*, 853 F.3d 1165, 1176 (10th Cir. 2017), quoting, *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (staying the litigation pending arbitration notwithstanding its admonition to the party).

8 *Republic Ins. Co.*, 383 F.3d at 347, quoting, *Price*, 791 F.2d at 1161.
9 *Ehleiter*, 482 F.3d at 224.
10 *Id.*

right to arbitration and the amount of prejudice that must be shown (i.e., the longer a party waits before invoking arbitration, the lower the quantum of prejudice to the opposing party required to demonstrate waiver).

Recognizing the inherent prejudice caused by delay, Courts routinely find that a significant delay prior to demanding arbitration (including delays much shorter than 9 months) contributes to the waiver of a party's right to arbitration.[11]

### B. THE ARBITRATION PROVISIONS ARE PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE AND THEREFORE UNENFORCEABLE.

Turning to the substance of the arbitration agreement itself, that agreement (or individual portions thereof) fail for a variety of reasons. Under Kentucky Law and the FAA, an arbitration agreement is unenforceable if it is unconscionable. *Davis v. Glob. Client Sols., LLC,* 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011).

**i. Defendant's arbitration agreement is so one-sided and biased that it is unenforceable as a whole.**

The Sixth Circuit Court of Appeals held that an arbitration provision that "grants one party to the arbitration unilateral control over the pool of potential arbitrators . . . inherently lacks neutrality." *McMullen v. Meijer, Inc.,* 335 F.3d 485, 494 (6th Cir. 2004). In *McMullen,* Meijer had exclusive control over the pool of potential arbitrators and the Court held that such control would prevent the arbitration forum from "being an effective substitute for a judicial forum because it inherently lacks neutrality." *Id.* at 494.

---

[11] See, e.g., *Lewallen*, 487 F.3d at 1091-94 (finding delay of 11 months contributed to waiver of right to arbitration); *Hoxworth*, 980 F.2d at 925-27 (same re 11 month delay); *St. Mary's Med. Ctr.*, 969 F.2d at 589-91 (same re 10 month delay); *Unified School Dist. # 503 v. R.E. Smith Constr. Co.*, 2008 US Dist. LEXIS 40771, *18—21 (D. Kansas May 21, 2008)(same re 5 month delay); *Kamette*, 444 F. Supp. 2d at 648-49 (same re 4 month delay).

Similar to the *McMullen* case, the case before us allows the Defendant to have exclusive control over the pool of potential arbitrators. However, the Defendant attempts to mask this exclusive control by stating that "[t]he arbitrator shall be selected by [Plaintiff] **from a panel of arbitrators acceptable to and chosen by the Club Manager from AAA's pool of arbitrators.**" (emphasis added). The Defendant ultimately decides on a pool of arbitrators that it finds favorable to itself and then give the Plaintiff the so-called "decision" of deciding on the arbitrator.

Moreover, Defendant's arbitration agreement refers to arbitrators from the American Arbitration Association ("AAA") only. The arbitration selection process at AAA is not participatory and lacks neutrality. AAA withholds information about who its arbitrators are and unilaterally makes an appointment without affording the parties any role in the selection process. Plaintiffs would have no access to AAA's secret list of arbitrators, nor would they be allowed any input in the arbitrator selection process. (Ex. C, AAA Arbitrator Select.) AAA does not allow Plaintiff to obtain information about the credentials and experience of the considered arbitrators.

It is also important to note that in order to get a list of arbitrators, participating parties must pay for that list. A list of five (5) arbitrators costs $750.00, a list of ten (10) arbitrators costs $1,500.00 and a list of fifteen (15) arbitrators costs $2,000.00. (Ex. C, AAA Arbitrator Select). It is likely that those organizations that arbitrate with AAA frequently are in a better position because they not only have previous list of arbitrators and are familiar with those arbitrators, but the organizations have also paid fees to AAA to get such lists. Once a list is provided to a party, the party can then contact the arbitrator directly. This effectively conveys to the arbitrator that (1) the business selected them for arbitration, allowing the arbitrator to

earn fees and (2) there is a quid pro quo business opportunity for the arbitrator. If the arbitrator gives the business a positive outcome, the business can continue to use that same arbitrator for all future arbitrations and the arbitrator would continue to be paid by the same business. Moreover, such a practice gives one party ex parte access to arbitrators right from the start. Therefore, by default, AAA and Defendant's arbitration agreement works in favor of the Defendant and against the Plaintiff. Allowing a business to purchase ex parte access and to directly convey a quid pro quo relationship between an arbitrator and a business creates an institutional client that drafts the arbitration clause to ensure the quid pro quo relationship is preserved with every single consumer dispute.

### ii. A BAN ON CLASS ACTION LITIGATION IS UNENFORCEABLE

This Court has previously stated,

> The Kentucky Supreme Court recently held that "an absolute ban upon class action litigation is unenforceable...as exculpatory, substantively unconscionable, and contrary to public policy." *Schnuerle*, 2010 Ky. LEXIS 288, at *19-20. A clause banning class actions is "an exculpatory provision which may effectively shield a company from liability for unlawful activity." *Id.* at *19. The general rule is that "in no event can such an exculpatory agreement be upheld where either '(1) the interest of the public requires the performance of such duties, or (2) because the parties do not stand upon a footing of equality, the weaker party is compelled to submit to the stipulation.'" *Id.* (quoting *Meiman v. Rehab. Ctr., Inc.*, 444 S.W.2d 78, 80 (Ky. 1969) (citation omitted)).

Davis v. Glob. Client Sols., LLC, 765 F. Supp. 2d 937, 941 (W.D. Ky. 2011)

Similarly, the arbitration agreement at issue here contains a ban upon class action litigation. Specifically, the arbitration agreement states, "YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS." The arbitration agreement continues to state that ". . . UNLESS BOTH YOU AND THE CLUB MANAGER AGREE

OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. IF THIS SPECIFIC PROVISION IS FOUND TO BE UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION PROVISION SHALL BE NULL AND VOID."

As held by the Court in *Davis,* this arbitration agreement is exculpatory, substantively unconscionable and contrary to public policy. As such, this clause should be stricken from the arbitration agreement. Moreover, because the arbitration agreement holds that the entire agreement is null and void if the class action provision is unenforceable, Plaintiff respectfully requests that this Court hold the entire arbitration agreement as unconscionable and null and void.

### iii. SUBSTANTIVE RIGHTS MAY NOT BE ABRIDGED BY AN ARBITRATION AGREEMENT

An agreement to arbitrate is valid "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Pruiett v. W. End Rests., LLC*, No. 3:11-00747, 2011 U.S. Dist. LEXIS 131369, at *9 (M.D. Tenn. Nov. 14, 2011) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000)). In *Pruiett,* the Plaintiff sued the Defendant under FLSA, which has a two-year statute of limitations and if the violation was willful, allows a plaintiff to recover compensatory damages up to three years. The arbitration agreement allowed for a one-year limitation and the court held that the provision was unenforceable because "[p]laintiff's substantive right to full compensation under the [law] may not be bargained away." *Pruiett v. W. End Rests., LLC,* No. 3:11-00747, 2011 U.S. Dist. LEXIS 131369, at *16 (M.D. Tenn. Nov. 14, 2011).

Similarly, the arbitration agreement in this case contains a blanket one-year limitation period to imitate a claim. However, the TCPA has a four-year statute of limitations. As such, Defendant has attempted to limit Plaintiff's substantive rights and attempts to re-write federal law. This arbitration provision is therefore unenforceable.

iv. **THERE IS NO SEVERABILITY PROVISION, AND THEREFORE THE ENTIRE ARBITRATION AGREEMENT SHOULD BE HELD UNENFORCEABLE.**

The Sixth Circuit strongly favors enforcement of severability clauses in mandatory arbitration agreements. *See Morrison v. Circuit City Stores, Inc.,* 317 F.3d 645, 675 (6th Cir. 2003). In *Morrison,* the Sixth Circuit Court of Appeals determined even though the arbitration agreement contained two unenforceable provisions, the arbitration agreement would be upheld without the provisions because of the severability clause.

Unlike *Morrison*, the arbitration agreement in the instant matter does not have a severability provision. Moreover, there is more than just one or two provisions that are unenforceable as discussed in detail above.

In *Pruiett,* the court severed the unenforceable provision and upheld the rest of the arbitration agreement because the agreement "appears designed to place the parties in essentially the same position in arbitration that they would have occupied before this court." *Pruiett,* 2011 U.S. Dist. LEXIS 131369, at *21.

Unlike *Pruiett*, the arbitration agreement here does not place the parties in any equal footing that they would otherwise have before this Court. There are multiple unenforceable provisions, and there is no severability provision contained in the arbitration agreement. To the contrary, the last sentence in the arbitration agreement states that "IF THIS SPECIFIC

PROVISION IS FOUND T OBE UNENFORCEABNLE, THEN THE ENTIRETY OF THIS ARBITRATION PROVISION SHALL BE NULL AND VOID." Based on Defendant's own agreement it seems that it intended for the exact opposite of a severability provision, and instead required the entire arbitration agreement to be enforceable or all of it to be unenforceable, with no space in between. Therefore, Plaintiffs respectfully request that this Court hold the entire arbitration agreement as unenforceable.

### C. PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The standard for a 12(b)(6) motion to dismiss is as stated below;

> In order to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett*, 561 F.3d at 488(citing *Gunasekera*, 551 F.3d at 466 (citations omitted)).

<u>Eldridge v. Cabela's Inc.</u>, Civil Action No. 3:16-cv-536-DJH, 2017 U.S. Dist. LEXIS 160427, at *14 (W.D. Ky. Sep. 28, 2017).

Given the standard set above, this Court must view Plaintiffs' complaint in the light most favorable to them. Plaintiffs have alleged that Defendant violated the TCPA by calling their cell phone after they revoked consent to be called. The Complaint (Doc. 1) clearly indicates each of the Plaintiff's cell phone number, and the number that Defendant called them from. Moreover,

the Complaint indicates that there was a pause before Defendant's representative began to speak which indicates the use of an automatic telephone dialing system. It is absurd for Defendant to think that Plaintiff could accurately and at this period of time in the litigation point to the exact make, model, capability and type of automatic telephone dialing system that Defendant utilizes. It is enough for Plaintiff to plead the facts necessary to state a claim and during the phase of discovery, Plaintiffs will be able to discover more information on the type of ATDS employed by Defendant.

Defendant cites to multiple cases to put forth the argument that Plaintiffs failed to allege a prima facie violation of the TCPA. However, Defendant failed to cite to binding authority on this Court. Additionally, this matter is distinguishable from some of the authority Defendant relies on. For example, Defendant relies on *Herrick v. GoDaddy*, 2018 U.S. Dist. LEXIS 83744 (D. Ariz. May 14, 2018), to bolster its argument that it did not use an ATDS. However, in *Herrick,* the parties "completed the phased discovery ordered by the [c]ourt," which was "ordered in part so that the parties could explore where the [system employed by defendant] was an ATDS under the TCPA." *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 U.S. Dist. LEXIS 83744, at *4 (D. Ariz. May 14, 2018). In this case, there has been no discovery conducted as this matter is in early stages of litigation. Plaintiffs has included all relevant information that was available to them at the time of the filing of the Complaint.

Defendant also cites *Marshall v. CBE Grp., Inc.,* 2018 U.S. Dist. LEXIS 55223, (D. Nev. Mar. 30, 2018) and *Dominguez v. Yahoo!*, No. 17-1243 (3d Cir. June 26, 2018) to support its argument that Plaintiffs failed to allege a prima facie violation of the TCPA. However, Defendant fails to indicate that both of these cases, like the *Herrick* case, had conducted discovery to determine whether the system employed was in fact an ATDS under the TCPA.

Plaintiffs have sufficiently pled a claim upon which relief can be granted and therefore this Court should deny Defendant's Motion to Dismiss.

### III. CONCLUSION

Defendant's mention in their Motion that some of the calls made to Plaintiff were not made directly by Defendant but a third party assigned by Defendant. Plaintiff will work with Defendant to obtain the appropriate party name and amend its Complaint to include said third-party. However, Defendant is still liable for all calls made by its agent.

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Compel Arbitration and Dismiss and hold that the entire arbitration agreement is unenforceable. If the Court is inclined to compel arbitration, Plaintiffs request that the Court allow for the parties to mutually agree on a neutral arbitration forum that will provide an effective substitute for this judicial forum. Additionally, should this Court determine that Arbitration is the appropriate forum for this matter, Plaintiff's request that the matter is stayed, not dismissed, pending the result of the arbitration.

RESPECTFULLY SUBMITTED,

Dated: July 26, 2018

By: /s/ STEFANIE EBBENS KINGSLEY
STEFANIE EBBENS KINGSLEY LAW
100 N. MAIN STREET, SUITE 300
CORBIN, KY 40701
(606) 261-2240 OFFICE
(606) 260-2565 CELL
stefanie@sek-law.com
Attorney for Plaintiffs,
Michael Miller and Magdalena Miller