UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:18-CV-00070-JHM

MICHAEL MILLER and MAGDALENA MILLER            PLAINTIFFS

V.

TLC RESORTS VACATION CLUB, LLC.                  DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Compel Arbitration and Dismiss Action or, in the alternative, Motion to Dismiss [DN 8]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

Plaintiffs Michael and Magdalena Miller bring this action against Defendant TLC Resorts Vacation Club, LLC ("TLC"). In 2015, the Millers enrolled with TLC, a company that offers memberships for vacation discounts and benefits. During the enrollment process, the Millers provided their cell phone numbers and agreed to receive transaction and collection calls at the provided cell phone numbers. Eventually, the Millers defaulted on their 48-month Retail Installment Contract with TLC and subsequently began to receive phone calls from TLC attempting to collect on the Millers' debt. Despite the Millers' request that TLC not contact them any further, between March 16, 2017 and May 11, 2017, they received approximately fifty calls from TLC to their cell phones. On May 9, 2018, the Millers filed this lawsuit against TLC claiming violations of the Telephone Consumer Protection Act, the Kentucky Consumer Protection Act, and common law.

TLC now asks the Court to compel arbitration of the Millers' claim. TLC's motion is based on an arbitration provision included in the contract that the Millers signed with TLC. By signing TLC's Club Rules, the parties promised that "**we agree to resolve any disputes through binding arbitration or small claims court instead of in courts of general jurisdiction**." (TLC Club Rules [DN 8-4] 4.) Further, "Club Manager and you agree to arbitrate **all disputes and claims** between us that can't otherwise be resolved through customer service . . . This agreement to arbitrate is intended to be broadly interpreted . . . ." (*Id.*) On this basis, TLC asks this Court to compel arbitration and dismiss the Millers' lawsuit.

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Furthermore, "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*.

## III. DISCUSSION

The Millers do not dispute the existence of the arbitration agreement in the Club Rules included in their agreement with TLC. Rather, they argue that the Court should refuse to compel arbitration or dismiss their case for two reasons. First, the Millers contend that TLC waived its

right to arbitration.  Second, the Millers claim that TLC's arbitration agreement is unconscionable and thus, unenforceable.

## Waiver

First, the Millers claim that TLC has waived its right to invoke arbitration.  Plaintiffs' counsel sent a pre-litigation demand letter to TLC on May 31, 2017.  After a delay in receiving the response, discussions about the case began on September 1, 2017.  At that time, counsel for TLC made Plaintiffs' counsel aware of the arbitration provision within the TLC Club Rules.  Plaintiffs' counsel requested a copy of the agreement containing the arbitration clause because the Millers no longer had a copy of the document they signed.  Counsel for TLC did not send Plaintiff's counsel the agreement despite numerous requests.  "The Plaintiffs waited until May 9, 2018, before finally deciding to file a lawsuit and seek relief."  (Resp. [DN 12] at 5.)

Due to TLC's counsel's refusal to provide a copy of the contract and arbitration provision for an extended period of time, the Millers argue that TLC waived its right to arbitrate by forcing them to invoke judicial process.  "An agreement to arbitration may be 'waived by the actions of a party which are completely inconsistent with any reliance thereon.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003); *see also Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 556 (Ky. 2008) ("Because waiver is not to be lightly inferred and because the general policy of both federal law and Kentucky law is to favor arbitration where parties have reached a valid agreement that disputes be arbitrated, courts must enforce arbitration agreements where (as here) the party seeking arbitration has not engaged in litigation conduct that is clearly inconsistent with asserting their arbitration rights.").

In this case, TLC has not acted in a manner completely inconsistent with asserting their right to arbitrate.  Although TLC's counsel did not provide a copy of the agreement when

requested, the Millers were made aware of the arbitration provision contained within TLC's Club Rules. Furthermore, upon receiving notice of this lawsuit, TLC immediately invoked its right to arbitrate by bringing this motion requesting that the Court compel arbitration. For this reason, the Court does not find that TLC has waived its right to arbitrate this dispute.

## Unconscionability

The Millers also argue that TLC's arbitration provision is substantively unconscionable and therefore unenforceable. "Under the FAA, generally available contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Under Kentucky law, the doctrine of unconscionability is to be "directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Schnuerle v. Insight Communs.*, Co. L.P., 376 S.W.3d 561, 575 (Ky. 2012) (quoting *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001)). "An unconscionable contract is 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" *Id*. (quoting *Conseco*, 47 S.W.3d at 342).

In this case, the Millers suggest that three aspects of TLC's arbitration clause make the provision substantively unconscionable. First, the Millers argue that the agreement's inclusion of a ban on class action litigation makes the arbitration provision unenforceable. Citing to *Davis v. Glob. Client Sols.*, LLC, 765 F. Supp. 2d 937 (W.D. Ky. 2011), the Millers suggest that Kentucky has held that absolute bans on class action litigation are unenforceable. However, TLC is correct in stating that since *Davis* was published, the Supreme Court establish a new holding in *AT&T*

4

*Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) that struck down state laws that made class action waivers illegal. The Supreme Court rationalized that contractual class waivers are enforceable because of the FAA's "liberal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Id*. at 339. Therefore, the fact that TLC's Club Rules prohibit class actions and class arbitrations does not make the agreement unenforceable.

Next, the Millers take issue with TLC's arbitration provision because it provides only a one-year window for bringing claims against TLC, while the statutory limitations period is two years. The Millers cite to a Tennessee case to support the proposition that shortening a limitations period is unconscionable because "[p]laintiff's substantive right to full compensation under the [law] may not be bargained away." (Mem. of Law in Opposition to Def.'s Mot. [DN 12] at 11.) However, TLC correctly responds that under Kentucky law, parties are free to contract for shorter limitations periods for bringing a claim. For one, a shorter statute of limitations involves a procedural right, not a substantive right. *Shupe v. Asplundh Tree Expert Co.*, 566 Fed. App'x 476, 484 (6th Cir. 2014). Moreover, the Kentucky Supreme Court has explicitly stated, "Parties are at liberty to contract for a limitation period less than the period fixed by statute." *Munday v. Mayfair Diagnostic Laboratory*, 831 S.W.2d 912, 914 (Ky. 1992). Thus, although TLC Club Rules set forth a limitations period shorter than would otherwise be determined by statute, this does not make the arbitration agreement unconscionable.

Third, the Millers protest the portion of the arbitration clause that "allows the Defendant to have exclusive control over the pool of potential arbitrators." (Mem. of Law in Opposition to Def.'s Mot. at 9.) Indeed, TLC's Club Rules provide that the Millers can select an arbitrator from a panel of arbitrators which are chosen by TLC from the American Arbitration Association's ("AAA") pool of arbitrators. The Millers contend that this kind of arbitration provision that gives

one party unilateral control over the panel of potential arbitrators inherently lacks neutrality. The Court agrees.

In *McMullen v. Meijer, Inc.*, the Sixth Circuit determined that provisions within an arbitration agreement were unacceptable because the agreement gave one party exclusive control over the pool of arbitrators. 355 F.3d 485, 494 (6th Cir. 2004). In that case, the arbitration provision instructed that the parties took turns striking names from a pool of five potential arbitrators selected solely by the employer Meijer. Similar to this case, while the aggrieved party had some control over which arbitrator from the pool was ultimately selected, it had no say in which arbitrators made up the pool. For this reason, the Sixth Circuit found that procedure prevented arbitration "from being an effective substitute for a judicial forum because it inherently lacks neutrality" and the parties were not compelled to arbitrate under the unconscionable procedure. *Id.* at 494.

Likewise here, an arbitrator is "selected by [the Millers] from a panel of arbitrators acceptable to and chosen by [TLC] from AAA's pool of arbitrators." (Club Rules at 5). But the Millers have no control over which arbitrators comprise the panel. This procedure is unconscionable as it lacks neutrality by offering no protection against biased panels. Therefore, the arbitrator selection provision is unconscionable.

The Court must next determine whether this unconscionable arbitrator selection process renders the entire arbitration agreement void or if it can be severed from the remainder. Contrary to the Millers' assertions in their Response, the TLC Club Rules contains the following severability clause: "In the event that any Terms are held by a court or other tribunal of competent jurisdiction to be unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that the remaining Terms shall otherwise remain in full force and effect." (Club Rules

at 6.) Therefore, the Court will strike the unacceptable arbitrator selection process while leaving the rest of the arbitration provision intact.

Lastly, a new process for selecting an arbitrator must be established. It is clear that the parties agreed the arbitration would proceed under the commercial arbitration rules of the AAA, therefore, the arbitrator selection procedures utilized by the AAA shall be implemented.

### Arbitration

In the present motion, TLC asks the Court to compel arbitration and dismiss this action. While the Court agrees that the TLC Club Rules require arbitration of all disputes between the parties, that is not a basis on which to dismiss this action. TLC admits that the FAA applies to this motion. The FAA instructs,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement

9 U.S.C. § 3. Thus, this lawsuit should be stayed until arbitration has occurred.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's motion is **GRANTED** to compel arbitration, however, Defendant's motion to dismiss is **DENIED.** An arbitrator shall be selected pursuant to the commercial arbitration rules of the AAA. This action will be **STAYED**, in accordance with 9 U.S.C. § 3, until the conclusion of the ordered arbitration.

For administrative purposes this case is **CLOSED.** Upon the completion of arbitration, the parties shall notify the Court.

cc: counsel of record

Joseph H. McKinley Jr., District Judge
United States District Court

December 18, 2018